This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **NO. 32,130**

**TIMOTHY P.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Gary K. King, Attorney General
Becca Salwin, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}     A student's truck was damaged from a scratch along its side while it was parked in the Carlsbad High School student parking lot. School surveillance footage displayed what appeared to be Timothy P. (Child) running his hand along the side of the truck. Relying on what she apparently considered to be applicable federal privacy law, the school principal refused to allow Child and his grandfather to view the surveillance footage. The surveillance system automatically recorded over the surveillance footage, leaving it completely unrecoverable. The State charged Child with the delinquent act of criminal damage to property (under $1000), a petty misdemeanor. *See* NMSA 1978, § 30-15-1 (1963).

{2}     On appeal, we consider whether failure to preserve the surveillance footage required suppression of testimony of two law enforcement officers who viewed the video before it was lost. We hold that the district court did not err in denying Child's motion to suppress. And we hold that sufficient evidence existed to support the jury's determination that Child committed the delinquent act.

**BACKGROUND**

{3}     The grounds for Child's motion were the failure to preserve the surveillance footage by making a copy of it when school resource officers, Officer Anna Austin and Deputy Pedro Marquez, and Donna Gonsalez, the school principal, knew or

believed that the surveillance footage could not be downloaded and that the footage would be automatically recorded over and lost.

**Testimony at the Suppression Hearing**

{4}     Both Officer Austin and Deputy Marquez stated that they were not able to download the surveillance footage.  At the suppression hearing, Principal Gonsalez testified as to why the surveillance footage could not be downloaded and to the fact that the footage was automatically recorded over and unretrievable.

{5}     The primary investigator, Officer Austin, testified that she reviewed the surveillance footage from the entire day of the incident.  The footage showed that only five students, including Child, had walked past the truck during that day.  Officer Austin testified that from the surveillance system using multiple cameras, she observed Child leave class, walk outside by the truck, and make contact with the truck with his right hand.  Officer Austin testified that because she was unable to download the surveillance footage, she called Deputy Marquez to review the footage and to witness, for himself, what was shown on the surveillance footage.  Deputy Marquez testified that when he reviewed the surveillance footage, he saw Child touch the truck with his right hand as he walked past it.

{6}     Child's grandfather testified at the suppression hearing that he was called to the school on October 18, 2011.  The grandfather testified that he asked to see the

surveillance footage, but he was told that no one could see the footage. Principal Gonsalez testified that she could not show the footage to Child and his grandfather because, according to her understanding, a federal law, Family Educational Rights Privacy Act (FERPA), would not permit it.

{7}    Principal Gonsalez also testified at the suppression hearing that Child admitted to having made contact with the truck. Child also reportedly told Principal Gonsalez that he did not notice any scratch marks on the truck before he touched it. According to Principal Gonsalez, she asked Child whether he had anything in his hand when he touched the truck, to which Child responded that he had a plastic wrapper that had once contained "plastic silverware" from the cafeteria in his hand when he touched the truck. Child stated that the "silverware" had been removed and that he had wrapped the plastic wrapper around his finger and rubbed it over the truck.

{8}    In closing argument at the suppression hearing, Child argued that the State collected the evidence when it started the investigation by isolating the alleged incident on the surveillance footage. Child argued further that the State exercised control over the footage and that he was extremely prejudiced in this case by having not been allowed to see the footage because there was a reasonable possibility that the footage contained exculpatory material. Having been deprived an opportunity to see the footage, however, Child stated he had no way of knowing whether it contained

4

exculpatory material. Child pointed out that the only person who had viewed the surveillance footage from the entire day was Officer Austin, and he argued that if he had viewed it himself, he might have seen something that Officer Austin missed. Finally, he argued that owing to the heightened protections of juveniles under the Children's Code and the Delinquency Act, suppression of testimony regarding the surveillance footage was warranted.

{9}  The district court denied the motion to suppress. The court found that there was a lack of ability to preserve the evidence and admonished the school for installing a surveillance system that prohibited the officers from downloading footage. "But notwithstanding," the court reasoned, "the officers made every effort to literally double check it through two sets of eyes so they would have that because they were aware that they couldn't preserve, they were unable to preserve that evidence." Further, based on both officers' testimony, the court found that there was no evidence that any exculpatory evidence would come from the surveillance video and that it was "absolutely mere speculation that there might be some." Thus, the court ruled, Child could cross-examine Officer Austin and Deputy Marquez at trial, but that their testimony regarding the surveillance footage would not be suppressed.

**Testimony at Trial**

{10} At trial, testimony of the student, who owned the truck that was damaged (the Student), constituted circumstantial proof that the scratch did not exist the day before and that the damage had to have occurred while he was parked at school, sometime before his friend, who was parked next to him on the passenger side, informed him of the scratch as he was leaving school. The Student testified that he had cleaned his truck the night before and observed nothing wrong with it; thus, the Student testified he was "one hundred percent" sure that there were no scratches on his truck when he got to school on the day in question. He also testified that he believed that the scratch was made during the school day because a powdery residue from the scratch remained along the scratch line and had he driven the truck after it was scratched, the powdery residue would have blown away.

{11} Officer Austin's testimony at trial, in part, repeated her testimony at the suppression hearing. She testified that she received a report from the Student that his truck had been scratched. She investigated the incident using the school's surveillance footage from the time that the Student parked his truck until the time that he left school. Officer Austin testified that only five students passed by the Student's truck that day, and of those five, Child was the only one who made contact with the truck. According to Officer Austin, the surveillance footage showed Child running his right hand across the side of the truck from the front quarter panel and maintaining contact

while passing by the passenger side door; having also inspected the truck, Officer Austin stated that the scratch on the truck corresponded to Child's contact with it. Likewise, Deputy Marquez testified at trial that Officer Austin called him to watch surveillance footage and that the footage showed Child touched the truck with his right hand as he walked by it.

{12}     Officer Austin and Principal Gonsalez testified as to the interview they held with Child and his grandfather.  Officer Austin testified that in the interview Child described using his right index finger and middle finger both wrapped in an empty plastic wrapper that was from cafeteria silverware and running his fingers along the side of the truck.  Principal Gonsalez also testified that in the interview Child admitted touching the truck using the plastic wrapper wrapped around his fingers, but that he had not noticed any damage to the truck.

{13}     Child testified at the trial that he had slightly touched the truck and two other vehicles with his right hand index and middle fingers and that he did not have anything in his hand at the time.  He testified further that the plastic wrapper was in his left hand, crumpled in a fist, not wrapped around his fingers, when he touched the truck.  According to Child's testimony, the plastic wrapper was a plastic wrapper that had contained a spork and a napkin, which he had thrown away, but he had kept the

plastic. Child also testified that he did not see a scratch on the truck and that if he had scratched the truck, another student or a teacher would have heard it.

{14} The jury determined that Child committed the delinquent act of criminal damage to property. On appeal, Child raises two points. One, that the district court erred in denying his motion to suppress when the State failed to preserve the surveillance video. Under this point, Child argues that (a) the State failed to preserve and disclose evidence and improperly relied on FERPA, (b) the New Mexico Constitution provides greater due process protection, and (c) admission of the officers' testimony absent the video violated the best evidence rule. Two, that the State failed to present sufficient evidence of criminal damage to property.

**DISCUSSION**

**Failure to Preserve and Disclose the Surveillance Video**

{15} Child argues that constitutional due process considerations gave rise to the State's duty to preserve and disclose the surveillance footage and that because the State failed in that duty, the district court erred in denying his motion to suppress. We review the denial of a motion to suppress de novo. *State v. Eric K.*, 2010-NMCA-040, ¶ 14, 148 N.M. 469, 237 P.3d 771. In reviewing the factual aspects upon which the motion is based, we view the facts in a light favorable to the district court's findings supported by substantial evidence. *Id.* In this case, we review the facts that were

8

presented at the suppression hearing to review the propriety of the district court's denial of the State's motion to suppress.

{16} Where a person claims a deprivation of evidence through the conduct of the prosecution, we analyze whether the evidence was gathered but not preserved as a result of loss or destruction, or whether the evidence was never gathered in the first place. *Compare State v. Chouinard*, 1981-NMSC-096, ¶¶ 11, 14, 16, 96 N.M. 658, 634 P.2d 680 (setting out a three-part due process test when the evidence is lost or destroyed), *with State v. Ware*, 1994-NMSC-091, ¶¶ 4, 25-26, 118 N.M. 319, 881 P.2d 679 (setting out a two-part due process test when the evidence was never gathered in the first place).

{17} In a *Chouinard* circumstance, where the evidence is not preserved because it was lost or destroyed, even though it had been gathered, we analyze whether (1) the prosecution breached some duty or intentionally deprived the defendant of evidence, if so; (2) the evidence was material and, if so; (3) the defendant was prejudiced as a result of the "suppression" of the evidence. 1981-NMSC-096, ¶ 16.

{18} In a *Ware* circumstance, where the prosecution failed "to collect evidence during the investigation of a crime scene[,]" we first analyze whether the ungathered evidence was material to the defendant's defense and, if it was, we then turn to the second factor—the conduct of the investigating officers. 1994-NMSC-091, ¶¶ 17, 25-

26. If the district court determines that the investigating officers' failure to collect the evidence "was done in bad faith, in an attempt to prejudice the defendant's case, then [it] may order the evidence suppressed." *Id.* ¶ 26. If the court determines that the officers were "grossly" or "merely" negligent, different remedies may apply. *See id.* (stating that the court may remedy grossly negligent failure to gather evidence by instructing the jury that it may infer that the evidence would be unfavorable to the prosecution and stating that mere negligence resulting from an oversight or done in good faith should be remedied by cross-examination of the prosecution's witnesses).

{19} Child views the circumstances as governed by *Chouinard*'s legal standard, arguing, as he did at the suppression hearing, that Officer Austin "collected" the evidence when she viewed the surveillance footage. Child provides no authority to support his assertion that the footage was "collected" by the officer's act of viewing it. Nor does the State provide authority to support its assertion to the contrary—that is, that the evidence was "never gathered in the first place[.]" Because neither party has briefed the issue, for purposes of this appeal we will assume, without deciding, that Child is correct that the evidence was "collected" by Officer Austin and Deputy Marquez by their act of viewing the surveillance footage. Accordingly, we apply the *Chouinard* test.

{20}     As an initial matter, we examine the factual basis of Child's argument. Child's argument regarding the State's failure to preserve and disclose evidence stems from three sources of alleged wrongdoing. First, Child argues that "[t]he State should not be allowed to maintain a faulty [surveillance] system[.]" Second, Child argues that "the State" erred in relying on FERPA as a basis for not allowing Child and his grandfather to watch the footage therefrom. And third, Child argues that Officer Austin had a duty to preserve the surveillance footage.

{21}     The record of the suppression hearing reflects that the school surveillance system was owned by the school district. Additionally, the record reflects that, although Officer Austin attended the meeting between Principal Gonsalez, Child, and Child's grandfather, Child's grandfather's request to watch the surveillance footage was directed at Principal Gonsalez, not Officer Austin. And, it was Principal Gonsalez, rather than Officer Austin who, relying on her understanding of the school district's FERPA-based policy, refused the grandfather's request to watch the footage.

{22}     Child provides no authority to support the assertion, implicit in his argument regarding the failures of "the State," that the school district or Principal Gonsalez had a duty to preserve or disclose evidence such that the alleged failures of the principal and the school district constitute a due process violation. *See State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410 (stating that where a party fails to cite authority in

11

support of an argument, we may assume that no such authority exists).  As such, we reject Child's attempt to conflate the actions of the school district and the school principal with the actions of Officer Austin, who in her capacity as law enforcement, may have had a duty to preserve evidence gathered in preparation for a criminal prosecution.  *Cf. State v. Turrietta*, 2011-NMCA-080, ¶ 29, 150 N.M. 195, 258 P.3d 474 (explaining that due process violation claims that are based on the suppression of evidence that may have been favorable to a defendant may inculpate prosecutors, "law enforcement personnel[,] and other arms of the state involved in investigative aspects of the case" (alteration, internal quotation marks, and citation omitted)); *State v. Tywayne H.*, 1997-NMCA-015, ¶ 12, 123 N.M. 42, 933 P.2d 251 ("Law enforcement officers function as adversaries of criminal suspects . . . [and] have the responsibility to investigate criminal activity . . . and to facilitate the charging and bringing of such persons to trial.  Rarely does this type of adversarial relationship exist between school authorities and pupils . . . [who have] a commonality of interests[.]" (internal quotation marks and citation omitted)).  Thus, in considering Child's *Chouinard* argument, we limit our analysis to the issue raised by Child as to Officer Austin's failure to preserve the surveillance footage.

{23}     As to the first element of the *Chouinard* test, Child argues that at the point that Officer Austin viewed the surveillance footage, she had a duty to preserve the

12

evidence. *See* 1981-NMSC-096, ¶ 16 (stating that the first element of the *Chouinard* test requires a determination whether the prosecution breached some duty or intentionally deprived the defendant of evidence). Officer Austin's testimony at the suppression hearing was that the surveillance equipment at the school did not provide her with the capability to download the surveillance footage "onto anything." Principal Gonsalez testified to the same effect. Thus, the facts presented at the suppression hearing demonstrated that in this case preservation of the actual surveillance footage was not practicable owing to the technological limitations of the school's surveillance system. Under these circumstances, we see no basis on which to hold that Officer Austin had a duty to preserve the footage. *See State v. Stephens*, 1979-NMSC-074, ¶ 8, 93 N.M. 368, 600 P.2d 820 (stating that the prosecution has a duty to preserve relevant evidence obtained in the investigation of a crime where preservation is "reasonably practical").

{24} Child argues that Officer Austin had a duty to preserve the surveillance footage by recording it with a "secondary device" as she viewed it. Yet Child, having cross-examined Officer Austin at the suppression hearing and again at trial, never elicited testimony from her in regard to whether she could have or should have preserved the evidence by recording it onto a secondary device. Accordingly, we do not know whether, for example, Officer Austin had access to a "secondary device" or whether

13

there existed any established police department protocol that would establish a basis for concluding that Officer Austin had a duty to preserve the evidence by recording it onto a secondary device. Thus, Child's purported solution, offered in hindsight, to preserve the footage by recording it with a secondary device lacks any foundational support in the record. Absent any evidence in the record to support the inference that Officer Austin should have or could have preserved the surveillance footage by recording it with a secondary device, we see no basis on which to hold that she had a duty to do so.

**{25}** In sum, under the circumstances of this case, Officer Austin did not have a duty to preserve a copy of the surveillance footage. Having failed to establish that Officer Austin had a duty to preserve the surveillance footage, Child has, by extension, failed to establish that a duty was breached. Accordingly, Child's argument does not satisfy the first element of the *Chouinard* test, and it provides no basis for reversal.

**New Mexico Constitution**

**{26}** Child argues that should this Court find that there was no federal constitutional due process violation, his juvenile adjudication should be dismissed for two reasons. First, Child argues that the New Mexico Constitution provides greater due process protections than the federal constitution. And second, relying on *State v. Javier M.*, Child argues that New Mexico has traditionally treated children with greater

14

protection. *See* 2001-NMSC-030, ¶¶ 1, 32, 131 N.M. 1, 33 P.3d 1 (recognizing that NMSA 1978, Section 32A-2-14 (2009) provides children with greater statutory protection than adults in the context of investigatory detention).

{27}     We turn first to Child's argument regarding the greater protections afforded by the New Mexico Constitution. "Under our interstitial approach to interpreting the New Mexico Constitution, we may diverge from federal precedent where the federal analysis is flawed, where there are structural differences between the state and federal governments, or because of distinctive New Mexico characteristics." *State v. Quiñones*, 2011-NMCA-018, ¶ 17, 149 N.M. 294, 248 P.3d 336 (internal quotation marks and citation omitted). In New Mexico, regardless of whether a due process claim involving the preservation of evidence arises under the federal constitution or under New Mexico's Constitution, the *Chouinard* test governs the courts' analysis. *See State v. Riggs*, 1992-NMSC-057, ¶¶ 7-12, 114 N.M. 358, 838 P.2d 975 (using the *Chouinard* test to evaluate the defendant's claim, pursuant to the federal and state constitutions, that he was deprived due process because the prosecution lost physical evidence "that could have cast doubt on his involvement in" a crime). Child does not argue that the *Chouinard* test is flawed, nor does he argue what more process is demanded by New Mexico's government or distinctive state characteristics. *See Quiñones*, 2011-NMCA-018, ¶ 17 (stating the bases for diverging from a federal

15

constitutional analysis based on the New Mexico Constitution). As such, his argument regarding New Mexico's greater protections is unclear and will not be reviewed further. *See State v. Lorenzo P.*, 2011-NMCA-013, ¶ 9, 149 N.M. 373, 249 P.3d 85 (stating that "[w]e will not review unclear arguments[] or guess at what the arguments might be" (alteration, internal quotation marks, and citation omitted)).

**{28}** Second, Child's reliance on *Javier M.* is misplaced. In *Javier M.*, this Court held that pursuant to Section 32A-2-14 children, who are subject to investigatory detention, must be advised of their constitutional rights prior to police questioning. *Javier M.*, 2001-NMSC-030, ¶ 29. In contrast, an adult's right to advice of their constitutional rights comes into effect only under circumstances of custodial interrogation. *Id.* ¶ 27. Thus, in the context of police questioning, our Supreme Court has held that the Legislature has mandated that children in New Mexico are to be afforded greater protections than adults. *Id.* ¶¶ 28-30. Yet, Child fails to provide statutory authority for the proposition that in the context of preservation and disclosure of evidence, the Legislature likewise intended to afford children greater protections than those afforded to adults under the constitutionally based *Chouinard* analysis. We assume that no such authority exists. *See Godoy*, 2012-NMCA-084, ¶ 5 (stating that where a party fails to cite authority in support of an argument, we may assume that no such authority exists).

{29} In sum, Child has failed to demonstrate that the New Mexico Constitution or the New Mexico Legislature afford him greater due process protections than he received in this case. As such, Child's due process argument regarding the State's failure to preserve the surveillance footage provides no basis for reversal.

**Best Evidence**

{30} Child contends that the court erred by admitting testimony from Officer Austin and Deputy Marquez "absent the video tape" because their testimony violated the best evidence rule. "The admission of evidence is entrusted to the discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion and that an error in the admission of evidence was prejudicial." *State v. Desnoyers*, 2002-NMSC-031, ¶ 31, 132 N.M. 756, 55 P.3d 968, *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).

{31} The best evidence rule, Rule 11-1002 NMRA, reads: "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." Rule 11-1004(A) NMRA provides, however, that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" In the absence of any evidence of Officer Austin having acted in bad faith, and in light of the ample evidence provided at the

17

suppression hearing and at trial showing that the surveillance footage had been automatically recorded over and was not retrievable, Child's argument that the "video tape," an item not in existence, was the "best evidence" of what the surveillance footage showed lacks merit.

{32}     Further, although Child asserts that Officer Austin "acted in bad faith in failing to secure a secondary copy" of the surveillance footage, this assertion is not supported by citations to the record. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record." (internal quotation marks and citation omitted)). Thus, insofar as Child's assertion on appeal that Officer Austin acted in bad faith is an attempt to avoid application of Rule 11-1004(A) to the circumstances here, it is unpersuasive. In sum, the record in this case shows that the surveillance footage, in the parlance of Rule 11-1004(A), was lost or destroyed, and Child has not shown that the loss or destruction was the result of Officer Austin's bad faith.

{33}     Child's reliance on *State v. Lopez*, 2009-NMCA-044, ¶ 14, 146 N.M. 98, 206 P.3d 1003, *Dyer v. State*, 26 So. 3d 700, 703-04 (Fla. Dist. Ct. App. 2010), and *State v. Mitchell*, No. COA11-228, 2011 WL 6046201 (N.C. Ct. App. Dec. 6, 2011), for the proposition that the district court erred in admitting Officer Austin's and Deputy Marquez's testimony regarding the footage without introducing "the video tape" is

misplaced. In *Lopez*, this Court held that the best evidence rule was violated where the prosecution presented testimony regarding the contents of documents, but without providing any explanation as to the availability of the documents did not enter the documents themselves into evidence. 2009-NMCA-044, ¶¶ 13-14. Here, unlike *Lopez*, the State explained that the surveillance footage was unavailable because it had been recorded over. In *Dyer*, a copy of surveillance footage purportedly showing the defendant stealing videos from a store was admitted at trial, but due to technical difficulties with the video, it was not played for the court. 26 So. 3d at 702. The court "move[d] on without it" allowing the store manager to testify as to what he had seen on the video. *Id.* The Florida appellate court held the testimony to be a violation of the best evidence rule because none of the exceptions to that rule applied. *Id.* at 703-04. Here, unlike *Dyer*, and as discussed earlier in this Opinion, the exception to the best evidence rule contained in Rule 11-1004(A) applies. Finally, in *Mitchell*, an officer used a hand-held video camera to record surveillance footage that could not otherwise be downloaded or saved. 2011 WL 6046201, at *1. The court held that the admission of the officer's recording did not violate the best evidence rule because the prosecution's failure to produce the original recording was "satisfactorily explained[.]" *Id.* at *2 (internal quotation marks and citation omitted). Here, like *Mitchell*, the absence of the actual surveillance footage was satisfactorily explained.

As discussed earlier in this Opinion, the officers' testimony regarding its content was not admitted in error. In sum, owing to the factual dissimilarities between the present case and the cases of *Lopez*, *Dyer*, and *Mitchell*, those cases are not supportive authority for Child's argument.

**Sufficiency of the Evidence**

{34}     Finally, Child argues that the State failed to present sufficient evidence to prove that he intentionally damaged the truck. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt[.]" *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted). In reviewing a sufficiency of the evidence claim, this Court "views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted).

{35}     Having already outlined the trial evidence in the background section of this Opinion, we need not reiterate it here. Substantial evidence existed for a jury determination, beyond a reasonable doubt, that Child intentionally scratched the truck. To the extent that Child argues that inferences to the contrary could be drawn from the State's evidence, this argument does not provide a basis for reversal. *See State v.*

*Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

**CONCLUSION**

{36}    We affirm.

{37}    **IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**J. MILES HANISEE, Judge**