**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMSC-036

Filing Date: June 28, 2013

Docket No. 33,057

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

MANUEL TURRIETTA,

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Denise Barela Shepherd, District Judge**

Bruce Rogoff, Supervising Attorney, UNM School of Law
Robert Milder, Practicing Law Student
Brianne Bigej, Practicing Law Student
Shannon Crowley, Practicing Law Student
Nicholas Sitterly, Practicing Law Student
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**MAES, Chief Justice.**

**{1}** In a criminal trial, the accused shall enjoy the right to a speedy and public trial. U.S. Const. amend. VI; N.M. Const. art. II, § 14. However the right to a public trial is not absolute and may give way in certain cases to other rights or interests. In this case we address whether Manuel Turrietta's (Defendant) right to a public trial was violated when the

1

district court partially closed the courtroom during the testimony of two confidential informants. We also address whether the State withheld favorable material evidence that was relevant to the guilt or punishment of Defendant, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## I.     PROCEDURAL HISTORY

**{2}**     Defendant, a member of two gangs known as Bad Boys Krew (BBK) and Thugs Causing Kaos (TCK), shot and killed Alberto Sandoval (Victim), a member of the West Side gang. Defendant was found guilty of second degree murder (firearm enhancement) contrary to NMSA 1978, Section 30-2-1(B) (1994), and NMSA 1978, Section 31-18-16(A) (1993), shooting at or from a motor vehicle resulting in great bodily harm contrary to NMSA 1978, Section 30-3-8(B) (1993), aggravated battery with a deadly weapon contrary to NMSA 1978, Section 30-3-5(C) (1969), and tampering with evidence contrary to NMSA 1978, Section 30-22-5(B)(1) (2003).

**{3}**     Following trial, Defendant appealed to the Court of Appeals claiming that

> "(1) the district court improperly closed the courtroom during the testimony of two confidential informants in violation of [his] right to a public trial under the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution; (2) the State suppressed favorable material evidence in violation of *Brady v. Maryland*, 373 U.S. 83; and (3) Defendant [was] entitled to a judgment of acquittal or, alternatively, a new trial, under the cumulative error doctrine."

*State v. Turrietta*, 2011-NMCA-080, ¶ 1, 150 N.M. 195, 258 P.3d 474. The Court of Appeals affirmed Defendant's convictions holding that Defendant's Sixth Amendment right to a public trial was not violated because the specific threats of retaliatory gang violence and evidence of gang presence in the courtroom provided a "substantial reason" for the district court to order a partial closure. *Id.* ¶¶ 18-19. The Court also determined that Defendant failed to establish evidence that the State suppressed *Brady* material because the record indicated that the State alerted Defendant to the deal struck with one of the witnesses during trial and there was no evidence that the other two witnesses ever struck a deal with the State. *Id.* ¶ 30.

**{4}**     Defendant petitioned this Court for certiorari pursuant to Rule 12-502 NMRA. We granted certiorari to address (1) whether the Court of Appeals erred under *Presley v. Georgia*, 558 U.S. 209 (2010), by relying on pre-*Presley* circuit authority providing for a less-strenuous constitutional test than *Presley* requires and (2) whether the Court of Appeals erroneously concluded that a prosecutor's misrepresentation that demanded *Kyles/Brady* matter did not exist is cured by the discovery of the material during a jury trial. We hold that the Court of Appeals erred by applying the "substantial reason" standard to a Sixth Amendment constitutional challenge. Accordingly, we conclude that when a court is

2

deciding whether a closure, partial or full, is constitutional it must analyze the facts using the more strenuous standard articulated in *Waller v. Georgia*, 467 U.S. 39 (1984). Additionally, we hold that the Court of Appeals was correct in affirming the district court's conclusion that there was no *Brady* violation.

## II. DISCUSSION

### A. Any closure of a courtroom, over the objection of the accused, must satisfy the *Waller* "overriding interest" standard

**{5}** The State filed a pre-trial motion requesting that the courtroom be cleared of unnecessary persons during testimony of four cooperating witnesses—David Torrez, George Morales, Brandon Neal and Joshua Ayala—all of whom were former gang members. The State argued that "[b]ased on previous trials involving gang members . . . the State [was] fearful that other gang members, and possibly family members, affiliated with the Defendant [would] 'pack' the Courtroom and 'maddog' the witnesses, or even try to physically intimidate [the witnesses] so that they [would] not testify."

**{6}** Outside of the presence of the jury, the district court held a hearing on the motion. The district court allowed the State to conduct a limited voir dire of the confidential informants recognizing Defendant's constitutional right to a public trial and that the State had the burden to establish a "substantial probability of danger" in order to justify closure. Defendant objected to the closed proceeding, arguing that a closed courtroom, even during a limited voir dire, violated an individual's First Amendment right to be present at a hearing and Defendant's Sixth Amendment right to a public trial.

**{7}** Torrez, a former member of TCK, testified that after he became an informant against Defendant and another gang member in an unrelated case, he began receiving threats from TCK. Torrez also testified that he was beaten up twice in jail by members of TCK. Morales testified that after TCK learned he had become an informant for the police, a TCK member called him "a rat or a snitch" and threatened to kill him. Morales did not say that the death threat was specifically related to him testifying at Defendant's trial.

**{8}** Because Neal testified that he was not concerned about the threats, and the State failed to establish that the threats Ayala had received came from Defendant's gang, the district court denied that part of the motion. The district court judge believed there to be a TCK presence in the courtroom after court security twice found the etched moniker "TCK Blast" outside the courtroom doors. Therefore, the district court partially granted the State's motion to close the courtroom during the testimony of Torrez and Morales. The court ordered that the immediate family members of both Defendant and Victim, as well as attorneys, staff members, and press, could remain in the courtroom but that all other members of the public would not be allowed in the courtroom during the testimony of Torrez and Morales "for the purposes of witness protection, as well as the protection of the [D]efendant and the [c]ourt." Defendant objected, stating that those who would be excluded

had a First Amendment right to attend proceedings and that he had a federal and state constitutional right to their presence. The district court overruled Defendant's objection, reasoning that it did not know of any other alternatives except to request the names and social security numbers of each observer to determine whether they were affiliated with any gangs, thus partial closure of the courtroom was the least intrusive and least limiting alternative available.

**{9}** The Court of Appeals affirmed Defendant's convictions ruling that Defendant's Sixth Amendment right to a public trial was not violated because the specific threats of retaliatory gang violence and evidence of gang presence in the courtroom provided a "substantial reason" for the district court to order a partial closure. *Turrietta*, 2011-NMCA-080, ¶¶ 18-21. The Court did not rely on the *Waller* "overriding interest" standard in upholding the district court's decision. Rather, because the district court only partially closed the courtroom during the testimony of Torrez and Morales, the Court applied the more lenient "substantial reason" standard which requires the party seeking closure to proffer a "substantial reason" for the partial closure, rather than an "overriding interest." *Id.* ¶ 18.

**{10}** The Court of Appeals reasoned that "a partial closure satisfies the court's obligation to consider, sua sponte, reasonable alternatives to a complete closure of the proceeding." *Id.* ¶ 17. In applying the more lenient standard in this case, the Court determined that the district court was correct in ordering a partial closure because "Torrez and Morales both testified that TCK gang members had threatened them with death or physical harm in retaliation for their cooperation." *Id.* ¶ 18. In reaching this decision, the Court of Appeals also relied on the fact that there was a "TCK presence" in the courtroom, reflected by the tagging "TCK Blast," found twice by the district court during the trial. *Id.*

**{11}** The Court of Appeals agreed with the Supreme Court of Ohio, which held that "'the dangerous nature of gang violence and the genuine need to protect witnesses testifying against gang members from the deadly threat of retaliation is a 'substantial reason' to order a partial closure of [a] courtroom.'" *Id.* (quoting *State v. Drummond*, 110 Ohio St. 3d 14, 2006-Ohio-5084, 854 N.E.3d 1038, at ¶ 54). The Court of Appeals went on to state that

> [t]he partial closure of the courtroom was narrowly tailored to protect the witnesses, Defendant, and the court from specific threats of gang violence. The closure did not extend beyond Torrez' and Morales' testimony and did not exclude the immediate family members of Defendant or Victim, attorneys, staff, or the press from the proceedings.

*Turrietta*, 2011-NMCA-080, ¶ 19.

**{12}** Defendant argues that his constitutional right to a public trial under the Sixth Amendment was violated when the district court granted the State's motion for a partial closure of the courtroom during the testimony of two witnesses, and as a result, excluded more than thirty people. Defendant argues that closure in this case was broader than

4

necessary by asserting that scores of people, including family members, were excluded from the courtroom without any specific finding of wrongdoing or that they posed any threat. In support of this Court adopting the more stringent "overriding interest" standard, Defendant argues that "[b]ecause the substantial reason test does not reflect the demanding test articulated by the Court in *Waller*, it is an inaccurate interpretation of Supreme Court precedent." Defendant supplemented the record following oral argument by citing to *Drummond v. Houk*, and pointed out that the Ohio Supreme Court case relied upon by the Court of Appeals in the present case was overturned as a result of a habeas corpus action in federal district court. 761 F. Supp. 2d 638 (N.D. Ohio 2010). Defendant asserts that in *Drummond*, the court held that the Ohio Supreme Court was incorrect in holding that there was a substantial reason to justify the courtroom closure because the court failed to make any specific inquiries into any actual threat and therefore defendant Drummond's case was remanded for a new trial. 761 F. Supp. 2d at 718. Defendant suggests that "[w]hen choosing an appropriate constitutional test, there is no reason for New Mexico to adopt the weakest possible one." Citing to *State v. Gutierrez*, Defendant suggests that "[t]his Court has taken a strong stance in protecting constitutional rights in other areas." 116 N.M.431, 435, 863 P.2d 1052 (1993) (rejecting the federal "good faith" exception in search and seizure cases). Defendant asserts that there is no reason not to do so here and that we should join other courts that have rejected the "substantial reason" standard as inadequate to protect the right to a public trial.

**{13}** The State argues that Defendant's constitutional right to a public trial was not violated when the district court granted the partial closure because the protection of the two witnesses and court personnel from actual gang threats and acts of intimidation met both the "substantial reason" and "overriding interest" standards. The State argues that the Court of Appeals correctly selected and applied the "substantial reason" standard in this case. Nonetheless, the State submits that the protection of witnesses against actual and specific intimidation and threats from gang members, ensuring the integrity of the judicial system and furthering the search for truth, clearly met both standards. The State claims that based on the evidence of threats and intimidation to witnesses presented at trial there was both a substantial reason and an overriding interest justifying the partial closure of the courtroom.

**{14}** An improper courtroom closure can violate a defendant's constitutional right to a public trial. *Waller* suggests that the violation of a right to a public trial can be a structural error. 467 U.S. at 49. A structural error can "include such [a] pervasive defect[ ] as . . . [the] denial of the right to a public trial." *State v. Rivera*, 2012-NMSC-003, ¶ 20, 268 P.3d 40 (citation omitted). Structural error, including deprivation of the public trial right, is not subject to harmlessness analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). The question of whether a defendant's constitutional rights were violated is a question of law which we review de novo. *State v. Brown*, 2006-NMSC-023, ¶ 8, 139 N.M. 466, 134 P.3d 753.

**{15}** In a criminal trial, the accused shall enjoy the right to a speedy and public trial. U.S. Const. amend. VI; N.M. Const. art. II, § 14. The Supreme Court has "'uniformly recognized

the public-trial guarantee as one created for the benefit of the defendant.'" *Presley*, 558 U.S. at 213 (quoting *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 380 (1979)). The right to "a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned," and "encourages witnesses to come forward [while] discourag[ing] perjury." *Waller*, 467 U.S. at 46. The right to a public trial is not absolute and "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Id.* at 45. However, these circumstances are rare and "the balance of interests must be struck with special care." *Id.*

{16}    There are two types of courtroom closures, total courtroom closures and partial courtroom closures. A total courtroom closure occurs when no spectators are allowed in the courtroom and only attorneys and court staff remain. *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995). A partial closure occurs when the courtroom is closed to some spectators, but not all. *Id.* The court in *Tinsley* v. *United States*, 868 A.2d 867, 874 (D.C. 2005), noted that some partial closures "might approach a total closure in practical effect."

{17}    A total courtroom closure is allowed when there is "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Waller*, 467 U.S. at 45 (internal quotation marks and citation omitted). Specifically, using the analysis of *Press-Enterprise Company v. Superior Court of California, Riverside County*, 464 U.S. 501 (1984), *Waller* outlines a four-pronged "overriding interest" standard

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the [district] court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48.

{18}    Several federal circuit courts have applied a less stringent "substantial reason" standard "for closure orders which only partially exclude the public or are otherwise narrowly tailored to specific needs." *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir. 1989). The reason for this standard, according to the 5th Circuit Court of Appeals, is because "partial closures do not implicate the same fairness and secrecy concerns as total closures." *Osborne*, 68 F.3d at 99. The Tenth Circuit has utilized the "substantial reason" standard for partial closures as well. *See, e.g.*, *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir. 1989) (holding that excluding some of the defendant's relatives because the testifying witness was afraid for his safety was a "substantial reason" justifying a constitutional, partial courtroom closure). This "substantial reason" standard appears to originate from a lack of case law addressing *Waller* in the context of partial closures and from the *Press-Enterprise* court alluding to a distinction between constitutional requirements for total and partial

6

closures. *See United States v. Sherlock*, 962 F.2d 1349, 1356-57 (9th Cir. 1989).

**{19}** We adopt the "overriding interest" standard as discussed by the Supreme Court in *Waller* for any type of courtroom closure. First, the difference between the two standards is not perfectly clear, other than the fact that the reviewing court knows that the "substantial reason" standard is a more lenient standard than the "overriding interest" standard. Second, within the *Waller* standard, the reviewing court is charged with considering reasonable alternatives to closing the proceeding. Therefore, if a reviewing court is already contemplating a partial closure, something less than a full closure, that analysis seems to already align with the *Waller* standard's requirement that the closure be no broader than necessary. Furthermore, if a party is seeking something less than full closure, the *Waller* standard should still apply as originally intended because any courtroom closure is an infringement on a defendant's Sixth Amendment right to a public trial, and therefore, such a request should not be granted lightly. The four-pronged "overriding interest" standard requires that:

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the [district] court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Id.* at 48. We now determine whether the district court was correct in granting the State's motion for a partial closure of the courtroom.

**1.      The State did not demonstrate an overriding interest for closure that is likely to be prejudiced**

**{20}** In this case the State's burden was to "advance an overriding interest that is likely to be prejudiced." *Waller*, 467 U.S. at 48. The State must show "a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent." *Press-Enterprise Co.*, 478 U.S. at 14. When dealing with witness intimidation by gang members, the State must show that "the witness has a legitimate fear that might affect his or her ability to testify truthfully." *Longus v. State*, 7 A.3d 64, 79 (Md. 2010). The proponent of a closure must establish "a nexus between the particular overriding interest asserted and open-court testimony." *People v. Jones*, 750 N.E.2d 524, 527 (N.Y. 2001).

**{21}** The State asserts that the facts were enough to constitute an overriding interest to close the courtroom. Defendant argues that the State failed to meet its burden because neither witness testified that the threats they received were specifically linked to this case or that intimidation would affect their testimony in court. Defendant further argues that the etched gang moniker does not establish an overriding interest and that speculative and general concerns do not support closure.

7

**{22}** Neither Torrez nor Morales ever stated that they were afraid to testify, that their trial testimony would be affected by any received threats, or that having gang members or related family members in the audience would affect their testimony. We are not to assume that the absence of a definitive statement that a witness's testimony would not be affected by an open courtroom means that it automatically would be effected. *Guzman v. Scully*, 80 F.3d 772, 775 (2d Cir. 1996) (explaining that "[s]ince no testimony was elicited from the witness alleged to be feeling intimidated, there was no ascertainment that the reason advanced by the prosecutor was substantial or likely to be prejudiced" (internal quotation marks and citations omitted)). Further, the State failed to establish whether the threats and violence that Torrez and Morales had experienced prior to trial were directly related to Defendant's case or other cases where both had admitted to snitching. Both Torrez and Morales had received those threats when TCK initially discovered they were assisting the police; the State did not present any evidence that the threats occurred or increased in an effort by TCK members to deter the two informants from testifying. Further, the State never presented any evidence that either Torrez or Morales was aware of the TCK etchings outside of the courtroom. There was insufficient proof that a link existed between the experienced threats and either witnesses' ability or willingness to testify. *See id.* at 775-76 (holding that the court cannot rely on representations from the prosecutor, rather the testimony must come from the witness himself). Without more, the State did not demonstrate an overriding interest that was likely to be prejudiced by an open courtroom. Therefore, the first prong of the *Waller* standard was not satisfied and the closure was unconstitutional. The courtroom closure in this case is deemed unconstitutional because of the failure of the first prong; however, because we are adopting a new standard, we address the remaining three prongs for the purpose of analysis.

## 2.     The closure was overly broad

**{23}** Defendant contends that the closure in this case was extreme and overly broad because there was no showing that the thirty plus people excluded were in any way gang-affiliated, had done anything wrong, or posed any threat. Defendant cites to a handful of cases holding that the exclusion of observers without specific justification supports a finding that the closure was overly broad: *State v. Ortiz*, 981 P.2d 1127, 1138 (Haw. 1999) (holding that the exclusion of defendant's family based on a "vague suspicion" of jury tampering and witness intimidation constituted an overly broad closure); *Com. v. Cohen*, 921 N.E.2d 906, 923 (Mass. 2010) (holding that the placement of a "Do Not Enter" sign outside of the courtroom due to lack of sufficient seating inside, which prevented observers from entering, was a "[c]losure by policy" and "runs counter to the requirement that a court make a case-specific determination before a closure . . . constitutionally may occur."); *Longus,* 7 A.3d at 79-80, n. 10 (explaining that a court may not "exclude additional spectators who did not participate in the disruption based on the conduct of one spectator"); *cf. Concha v. Sanchez,* 2011-NMSC-031, ¶¶ 1, 37, 45, 150 N.M. 268, 258 P.3d 1060 (finding the blanket detention of thirty-two courtroom spectators invalid where there was no attempt to determine the guilt of individual observers).

**{24}** The State argues that the closure in this case was narrowly tailored because the court

8

enforced only a partial closure, allowing Defendant's family, Victim's immediate family, attorneys, staff, and members of the press to remain. Further, the State asserts that the closure was not overly broad because it was only enforced during the testimony of Torrez and Morales. However, the State failed to cite to any supporting authority explaining how or why the district court's closure was narrowly tailored so as not to infringe on Defendant's Sixth Amendment right to a public trial.

**{25}** The second prong of *Waller* requires that the closure "be no broader than necessary to protect [the overriding interest]." *Waller*, 467 U.S. at 48. A properly tailored closure may exist where a careful balance of interests is struck and only the individuals allegedly involved in the creation of the threat are excluded. *See Longus*, 7 A.3d at 82. Here, both Torrez and Morales testified to the names of specific individuals from TCK who had threatened and intimidated them. The district court could have chosen to exclude those named gang members, possibly creating a narrowly tailored closure. Instead, the district court excluded more than thirty people without knowing how many of them, if any, were gang affiliated. The court also later admitted that as a result of the closure, it had excluded "members of . . . [D]efendant's family and a few of his friends."

**{26}** "[A]n accused is at the very least entitled to have his friends, relatives and counsel present[.]" *In re Oliver*, 333 U.S. 257, 272 (1948). The relationship between those excluded to the defendant must be taken into account when deciding whether a closure is constitutional. *English v. Artuz*, 164 F.3d 105, 108 (2d Cir. 1998). Here, some family members and friends were excluded without any finding that they posed a threat, suggesting that the exclusion was overly broad and unconstitutional. *See id.* at 109 (holding that the right to a public trial was violated when the court excluded family members, and rejecting the government's contention that removal of spectators was required because the state could not tell who was a family member of the defendant).

**{27}** Accordingly, the State did not satisfy the second prong of *Waller*.

### 3. The district court failed to adequately assess possible alternatives to closure

**{28}** The third *Waller* prong requires that the court consider reasonable alternatives to closure. 467 U.S. at 48. A district court is required to "take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 558 U.S. at 215. Even if the parties do not offer alternatives to closure, the court is required to assess whether any reasonable alternatives exist. *Id.* at 213-14.

**{29}** The State argues that the district court's granting of a partial closure was a reasonable alternative to a complete closure. Citing to *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997), the State contends that some courts have interpreted the third prong of *Waller* to mean that trial courts need not consider sua sponte any and all alternatives to partial closure, but rather they must only consider sua sponte alternatives to complete closure. Defendant asserts that *Presley* requires a court to consider all alternatives, even if not offered by the

parties. 558 U.S. at 214. Defendant argues that there were a variety of reasonable alternatives to both a partial and complete closure such as screening observers, *see United States v. DeLuca*, 137 F.3d 24, 34 (1st Cir. 1998) (explaining that screening and recording spectators' identification was a constitutional response to the potential witness intimidation), admonishing spectators of possible criminal sanctions, *see Ortiz*, 981 P.2d at 1138; *Longus,* 7 A.3d at 79-80 n.10 (noting that a spectator's in-court misconduct allows removal), the wait-and-see method, *see Sherlock*, 962 F.2d at 1356-57 (explaining that a judge may decide to leave the courtroom open and then based on the witness's demeanor and ability to testify, determine whether closure is appropriate), or increased security in the courtroom, all of which the court in this case chose not to pursue.

**{30}** We decline to follow the State's interpretation of the third *Waller* prong and instead adopt *Presley's* rule that a court must consider, sua sponte, all alternatives to any type of closure. *Presley,* 558 U.S. at 214. Although Defendant did not suggest at trial all of the alternatives to closure that he now argues, the district court had the responsibility to consider as many alternatives as possible. In fact, the judge suggested that screening the spectators and recording names to determine gang affiliation was a possibility, but neglected to do so. As Defendant now suggests there were several other alternatives to closure that the district court did not consider such as using the wait-and-see method or increasing security. Because the district court failed to consider all reasonable alternatives to closure, we hold that the third *Waller* prong was not satisfied.

**4.      The district court failed to make adequate findings under the *Waller* standard to support closure**

**{31}** The final prong of *Waller* requires that the court make legally adequate findings to justify the closure. 467 U.S. at 48. It is appropriate to evaluate the amount of evidence required and the level of findings needed to support an overriding interest in closure. *Drummond*, 854 N.E.2d at 1055. When a trial court fails "to make the requisite case-specific findings of fact, closure of the courtroom violate[s] the defendant's right to a public trial." *Longus*, 7 A.3d at 79-80 (citation omitted).

**{32}** Defendant argues that the Court of Appeals erred in applying the more lenient "substantial reason" standard as established in *Douglas v. Wainwright*, 739 F.2d 531, 532 (11th Cir. 1984), and thus its findings are not legally adequate to support closure as analyzed through the *Waller* standard. Defendant asserts that if we were to adopt the less stringent standard for closure, the exception would swallow the rule and fear and intimidation would be rewarded instead of discouraged. Defendant maintains that "inside the courthouse constitutional process must govern" and the adoption of the "overriding interest" standard ensures that courts retain the necessary control to remain as open and public as possible.

**{33}** The State maintains that the district court made adequate legal findings in granting the partial closure to support both the "substantial reason" and "overriding interest" tests. The State points to the Court of Appeals' affirmation of the district court's ruling that

10

protection of a witness who claims to be frightened as a result of perceived threats did not violate Defendant's Sixth Amendment right to a public trial. By implementing a narrowly tailored closure, the State argues that violent and threatening spectators are kept out of the courtroom which prevents disruption of the fairness of trials, contrary to Defendant's reasoning.

**{34}** The district court justified the closure based on "the danger to the witnesses . . . and the fact that [there were two etchings] outside of [the] courtroom, indicating that there [was a] TCK presence that [was] undetected." This basis however fails to mention any specific threat or possibility of intimidation. In fact, no testimony was ever elicited from Torrez or Morales that either was afraid to testify or that the presence of certain spectators in the courtroom would affect their ability to testify. Similarly, there is nothing in the record that indicates either informant witness was aware of the etchings outside the courtroom. Finally, the district court admitted that it was unable to identify who was gang-affiliated and thus it was unable to ascertain who if anyone posed a real or specific threat. The findings of fact concerning the two etchings and testimony from the informants about past threats were not sufficient to justify closing the courtroom and did not satisfy the fourth Waller requirement. As such, Defendant's Sixth Amendment right to a public trial was violated.

## B.     There was no *Brady* violation

**{35}** The Supreme Court has held that a defendant's due process rights are violated when the prosecution suppresses favorable evidence. *Brady*, 373 U.S. at 86-87. Under *Brady*, a defendant must prove three elements: first, the evidence was suppressed by the prosecution; second, the suppressed evidence was favorable to the defendant; and third, it was material to the defense. *State v. Balenquah*, 2009-NMCA-055, ¶ 12, 146 N.M. 267, 208 P.3d 912. An alleged *Brady* violation constitutes a charge of prosecutorial misconduct, *State v. Trujillo*, 2002-NMSC-005, ¶¶ 48, 50, 131 N.M. 709, 42 P.3d 814, which we review for abuse of discretion "because the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors," *Case v. Hatch*, 2008-NMSC-024, ¶ 47, 144 N.M. 20, 183 P.3d 905 (internal quotation marks and citation omitted). An appellate court, therefore, will affirm the district court "unless its ruling [was] arbitrary, capricious, or beyond reason." *Id*. (alteration in original) (internal quotation marks and citation omitted).

**{36}** Defendant contends that the State improperly suppressed favorable evidence, namely files and information related to alleged deals the informant witnesses had made with the State. Defense counsel subpoenaed the witnesses' informant files and later filed a motion to compel production of the files when the subpoenas went unanswered. Defendant argues that he wanted to determine whether any consideration was given to each witness for their cooperation in this case or any other, including promises of protection, money or relocation expenses, which was necessary information for cross-examination relating to bias and motive to lie. Defendant ultimately received a redacted version of Torrez' files, but according to the State, such files did not exist for any of the other witnesses.

11

**{37}** Prior to trial, the State informed the district court that no witness was paid and that there were no informant files related to this case. At trial, it was discovered that one of the confidential informants struck a deal with the State to be released from jail in exchange for the testimony. The State informed the district court that it had disclosed this information to Defendant and that Defendant was fully aware of this new development. Defendant did not dispute this claim.

**{38}** The Court of Appeals held that Defendant "failed to establish that the State suppressed evidence in violation of *Brady*." *Turrietta*, 2011-NMCA-080, ¶ 30. Although the Court of Appeals acknowledged that a few of the witnesses' testimony supported an inference that they testified *in hopes* of receiving favorable treatment from the State, there was no evidence to indicate that the hope was realized or that a deal with the State was reached. *Id.* In the absence of such evidence, the Court of Appeals could not "conclude that Defendant was deprived of his constitutional right to due process of law." *Id.*

**{39}** On appeal, the State argues that Defendant has failed to satisfy any *Brady* element, primarily because no additional files existed to be suppressed. Despite the State's insistence that no other files existed, Defendant maintains that files containing information on deals with the other three witnesses did exist and were suppressed. We find this argument unavailing as Defendant cannot cite to any evidence suggesting even an inference that additional files existed. The district court was in the best position to evaluate whether any prosecutorial misconduct occurred and found that only a portion of the only existing "gang file" should be produced to Defendant. Because Defendant failed to satisfy the first *Brady* element, that any evidence was suppressed, we need not reach the other two *Brady* elements. Thus, the district court did not abuse its discretion by finding that a *Brady* violation did not occur and that Defendant's due process rights were not violated in regards to any exculpatory information.

## III.   CONCLUSION

**{40}** We hold that the "substantial reason" standard does not meet constitutional muster and a court must apply the *Waller* standard prior to any courtroom closure. In this case, Defendant's Sixth Amendment right to a public trial was violated and the closure of the courtroom during his trial was unconstitutional. Additionally, we hold that a *Brady* violation did not occur. Accordingly, we affirm in part and reverse in part Defendant's appeal and remand to the district court for a new trial consistent with this Opinion.

**{41}   IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**

**Topic Index for *State v. Turrietta*, No. 33,057**

**APPEAL AND ERROR**
Cumulative Error
Fundamental Error
Remand

**CONSTITUTIONAL LAW**
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL LAW**
Firearm Enhancement
Murder
Shooting Offences
Tampering

**CRIMINAL PROCEDURE**
Misconduct by Prosecutor
Public Trial

**EVIDENCE**
Suppression of Evidence