**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-034**

**Filing Date: January 16, 2014**

**Docket No. 31,568**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**ROBERT HOOD,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, District Judge**

Gary K. King, Attorney General
Margaret McLean
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** At Robert Hood's (Defendant) trial on charges of trafficking cocaine, the district court excluded, over Defendant's objection, all members of the public from the courtroom during the testimony of an undercover officer. On appeal, Defendant contends that this courtroom closure violated his Sixth Amendment right to a public trial. Applying our Supreme Court's recent decision in *State v. Turrietta*, 2013-NMSC-036, 308 P.3d 964, we conclude that the closure was unconstitutional because although the disclosure of an undercover identity may constitute an overriding interest likely to be prejudiced by open-

court testimony, the trial record indicates that the district court proscriptively closed the courtroom to all members of the public during the undercover officer's testimony without inquiring into the nature or circumstances of individuals to be excluded. Further, the trial record is devoid of findings regarding inquiry into whether there existed reasonable alternatives to the closure of the proceedings. Accordingly, pursuant to the exacting standard articulated in *Turrietta*, and to which we are bound, we reverse Defendant's conviction and remand for a new trial.

## BACKGROUND

**{2}** An undercover officer and a confidential informant arranged to buy crack cocaine from Defendant. As a result of the purchase, Defendant was charged with trafficking cocaine. The jury found him guilty, and the State filed a supplemental information, listing several prior offenses for purposes of a habitual offender enhancement pursuant to NMSA 1978, Section 31-18-17 (2003). Defendant was sentenced to eighteen years for the trafficking conviction, which the district court reduced by four years pursuant to NMSA 1978, Section 31-18-15.1 (2009). He was additionally sentenced to four years pursuant to the habitual offender enhancement, resulting in a total term of incarceration of eighteen years. Defendant appeals, raising three claims of error: that he was denied his Sixth Amendment right to a public trial, that his conviction was not supported by substantial evidence, and that his sentence subjected him to cruel and unusual punishment. Because *Turrietta* compels that we reverse and remand on Sixth Amendment grounds, we do not consider Defendant's remaining claims of error.

**{3}** Prior to trial, the State filed a motion to clear the courtroom during the testimony of Officer Nick Bloomfield. Officer Bloomfield worked undercover, and although the State had listed his real name on its witness list, it did not want his undercover identity to be disclosed to members of the public in the courtroom, as there might be someone who would recognize him during his ongoing undercover operations. At the hearing on the State's motion, Officer Bloomfield did not testify, nor did the State present evidence supporting its motion to close the courtroom to all spectators during the officer's testimony. Thus, specific information about Officer Bloomfield's operations and the need for the courtroom to be closed during his testimony was based solely upon the State's representations to the court. In addition, the district court asked the State to submit a sealed document containing the number of cases that Officer Bloomfield was working on, along with information about how many of his cases had been filed and how many had been resolved. The district court asked that the list not contain any details about the law enforcement operations.

**{4}** As directed, the State submitted the responsive document under seal and provided a copy to defense counsel. The document has since been unsealed by consent of the parties, and it represents that Officer Bloomfield had been involved in twenty investigations as an undercover officer. From these, five criminal cases were still pending at the time of the hearing. Those investigations had been resolved at the time of the State's motion, but Officer Bloomfield's involvement had not yet been revealed. As well, the document revealed that

2

Officer Bloomfield was still participating in two investigations in which he was operating undercover.

**{5}** On the day of trial, prior to voir dire, the district court asked the State whether Officer Bloomfield had ever testified in open court. The State represented that Officer Bloomfield had testified once in district court and at a few preliminary hearings in magistrate court, and that, in each instance, the courtroom was closed during his testimony. The district court then ruled that it would close the courtroom during Officer Bloomfield's testimony because it thought that "there [was] a legitimate public safety issue" as Officer Bloomfield had "some ongoing investigations."

## DISCUSSION

### The Sixth Amendment Right to a Public Trial

**{6}** Defendant argues that the district court erred in closing the hearing to the public during Officer Bloomfield's testimony because the Sixth Amendment to the United States Constitution guarantees the right to a public trial. In a criminal prosecution, "the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI; N.M. Const. art II, § 14. We review this claim of error de novo. *Turrietta*, 2013-NMSC-036, ¶ 14. If a hearing is closed in violation of the Constitution, the denial of the right to a public trial is a structural error; thus, it is not subject to a harmless error analysis. *Id.*

**{7}** One purpose of the right to a public trial is to benefit the accused, "that the public may see he is fairly dealt with and not unjustly condemned[.]" *Id.* ¶ 15 (internal quotation marks and citation omitted). Although the right to a public trial serves to protect important interests, the right is not absolute and "may give way in certain cases to other rights or interests, such as . . . the government's interest in inhibiting disclosure of sensitive information." *Id.* (internal quotation marks and citation omitted). However, circumstances such as these are rare and "the balance of interests must be struck with special care." *Id.* (internal quotation marks and citation omitted). It is now settled in New Mexico that, when a party seeks courtroom closure, whether it be partial or total, the "overriding interest" standard, as adopted by our Supreme Court in *Turrietta* and articulated in *Waller v. Georgia*, 467 U.S. 39 (1984), will apply.[1] *Turrietta,* 2013-NMSC-036, ¶ 19. The *Waller* standard is

---

[1]"There are two types of courtroom closures, total courtroom closures and partial courtroom closures. *Turrietta*, 2013-NMSC-036, ¶ 16. A total closure occurs when only the attorneys and courtroom personnel are permitted to remain in the courtroom, at the exclusion of all other spectators. *Id.* In the case of a partial closure, some spectators are permitted in the courtroom while others are excluded. *Id*. The State argues that the closure in this case was a partial closure and should be subjected to a more lenient "substantial reason" standard rather than the *Waller* "overriding interest" standard. Our Supreme Court's decision in *Turrietta*, adopting the *Waller* "overriding interest" standard to all courtroom closures,

a four-pronged inquiry requiring that:

> [(1)] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the district court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure.

*Turrietta*, 2013-NMSC-036, ¶ 19 (alteration, internal quotation marks, and citation omitted).

**{8}** In *Turrietta*, our Supreme Court was faced with deciding the constitutionality of a courtroom closure during the testimony of four cooperating witnesses. *Id.* ¶¶ 1, 5. The cooperating witnesses were former gang members set to testify against the defendant, a member of two gangs, who shot and killed a member of another gang. *Id.* ¶¶ 2, 5. The prosecution sought to close the courtroom during the testimony of the witnesses out of fear that individuals affiliated with the defendant would fill the courtroom and attempt to intimidate the witnesses. *Id.* ¶ 5. Over the defendant's objections, the district court conducted a limited voir dire of the cooperating witnesses. *Id.* ¶ 6. During these proceedings, one such witness testified that after he began informing against the defendant in an unrelated case, he was subjected to threats and was physically assaulted on two occasions. *Id.* ¶ 7. A second witness testified that after the gang learned of his status as a confidential informant, he received a death threat. *Id.* Further, the district court recognized a gang presence in the courtroom after a gang moniker was twice found etched outside the courtroom doors. *Id.* ¶ 8. Accordingly, over the defendant's objections, the district court closed the courtroom during the testimony of two of the cooperating witnesses and excluded all members of the public, with the exception of the immediate family of the defendant and the victim, attorneys, court staff, and members of the press. *See id.* The defendant appealed, and this Court affirmed the district court. *Id.* ¶ 9. After granting certiorari, our Supreme Court adopted the *Waller* "overriding interest" test. *Turrietta*, 2013-NMSC-036, ¶¶ 4, 19. Based on the failure of the first *Waller* prong, the closure was deemed to be unconstitutional, and the case was remanded to the district court for a new trial. *Id.* ¶¶ 22, 40.

**{9}** We now apply the *Waller* standard to determine whether the district court committed error in granting the State's motion to close the courtroom during Officer Bloomfield's testimony. For the purposes of our analysis, we assume, without deciding, that the State's objective to conceal the identity of an active undercover officer constitutes an overriding interest that is likely to be prejudiced by open-court testimony. Even with this assumption, however, under *Turrietta*'s stringent requirements, the courtroom closure in this case was nonetheless unconstitutional. Not then having the benefit of the holding articulated in

_____

renders this argument moot. *Turrietta*, 2013-NMSC-036, ¶ 19 (internal quotation marks omitted).

*Turrietta*, the basis for the district court's closure in the case before us failed to comport with prongs two, three, and four of the *Waller* test. *See Turrietta*, 2013-NMSC-036, ¶ 22 (indicating that, under the *Waller* test, a courtroom closure is unconstitutional based on the failure of one of the four prongs). Because no record exists regarding inquiry or findings pertaining to the second and third prongs, we do not address the initial "overriding interest" *Waller* factor.

**{10}**     When an overriding interest is established by the prosecution, a courtroom closure is nonetheless only constitutional if it meets the remaining *Waller* requirements. The second commands that the closure "be no broader than necessary to protect the overriding interest." *Turrietta*, 2013-NMSC-036, ¶ 25 (alteration, internal quotation marks, and citation omitted). A district court's closure is not overly broad if it first strikes a "careful balance of interests" that results in the exclusion of only those persons thought to be responsible for the existence of the basis of prejudice to the overriding interest. *Id.* The State argues that the closure in this case was only as broad as necessary to protect Officer Bloomfield's identity, safety, and the integrity of his investigations. However, the record reveals that the State provided no evidence regarding identification of any persons whose presence during Officer Bloomfield's testimony may have imperiled ongoing investigations or have threatened the officer's safety in those investigations. Had the district court sought or the State provided such information, the closure could perhaps have been tailored to exclude only those persons who posed a threat to the officer's identity, safety, or the viability of his undercover work. Instead, however, the district court ordered a closure that generally precluded the attendance of all members of the public without evidence showing and any finding that the disallowed observers were potentially a threat to law enforcement, or otherwise justifying the officer's concerns in connection with ongoing undercover narcotics investigations. Accordingly, we determine that the exclusion was broader than necessary to protect any overriding interest and, thus, was unconstitutional. *See id.* (expressly concluding courtroom closure was overly broad and unconstitutional when the court excluded some spectators without a finding that the excluded individuals posed a threat).

**{11}**     In conjunction with the second prong, the third *Waller* factor requires that the district court consider reasonable alternatives to closing the proceedings. *See Turrietta*, 2013-NMSC-036, ¶ 28. This consideration encompasses a requirement that the "district court . . . take every reasonable measure to accommodate public attendance at criminal trials." *Id.* (internal quotation marks and citation omitted). Here, the State argues that the alternatives that Defendant proposes in his brief in chief "cannot be taken seriously" nor would they have been effective to protect an overriding interest from being prejudiced at trial. The State further takes issue with the fact that Defendant did not suggest these alternatives to the district court in the proceedings below. However, in *Turrietta*, our Supreme Court indicated that it was the prosecution's burden to present a case coming within the *Waller* factors. *See id.* ¶¶ 20, 25 (stating that, with respect to overriding interest, the prosecution had "advance[d] an overriding interest that is likely to be prejudiced" and that, with respect to the second prong, "the [prosecution] did not satisfy the second prong of *Waller*" (internal quotation marks and citation omitted)). Further, the Court articulated that the district court

5

"must consider, sua sponte, all alternatives to any type of closure." *Id.* ¶ 30. Therefore, although Defendant did not propose any suggested alternatives to the district court, the State bore the burden and the district court bore an obligation under *Turrietta* to independently engage in the consideration of potential options to prophylactic closure.

**{12}**    At the hearing on the State's motion to close the courtroom, the State suggested that the only alternative to the closure to the public would be to inquire of those seated in the courtroom whether they were drug dealers and ask those who identified themselves as such to leave the courtroom. The State added that no one in the courtroom would likely oblige such a request. In any event, pursuant to the third *Waller* factor, such a limited inquiry too would have been deficient. Considered in whole, the record does not indicate that the district court screened any spectators to any degree, nor does it demonstrate that the court considered pursuing alternatives to closure. As Defendant now suggests and *Turrietta* discussed, there were several other alternatives to closure that the district court did not consider. *See id.* Defendant's suggestions on appeal include conducting a screening of spectators by security personnel, recording the spectators' identities, and removing any photographic, audio, or video recording equipment during the officer's testimony. Likewise, in *Turrietta*, the court noted spectator screening, name recording, increases in security, and the "wait and see" method as areas of inquiry suitable to review under the "reasonable alternative" prong of *Waller*. *See Turrietta*, 2013-NMSC-036, ¶ 30 (citing *United States v. Sherlock*, 962 F.2d 1349, 1356-57 (9th Cir. 1989) (describing method that involves district court's observance of witness demeanor and capacity to testify prior to closure determination). Because the district court here did not consider all reasonable alternatives to excluding all observers from the proceedings, we conclude that the third *Waller* prong was not satisfied. *See Turrietta,* 2013-NMSC-036, ¶ 30 (concluding that the third *Waller* prong was not satisfied where the district court failed to consider all reasonable alternatives when options in lieu of the exclusion of spectators were mentioned at trial and in the defendant's brief).

**{13}**    With regard to the final *Waller* requirement that the district court make findings adequate to support the closure, we recognize that the district court in this case did not undertake a full analysis of the *Waller* test, quite possibly because *Turrietta* had not yet been issued, but our Opinion, which affirmed the closure, had been filed. Thus, district court findings on the factors had not yet been compelled by precedent. Although we sympathize with the State and the district court's desire to ensure Officer Bloomfield's safety and the integrity of his investigations, under *Turrietta*, specific findings on the *Waller* factors were required. *See Turrietta*, 2013-NMSC-036, ¶ 31. Accordingly, as the district court did not issue findings as to any specific threats to Officer Bloomfield's identity, safety, or the viability of his undercover operations, nor as to the breadth of or reasonable alternatives to closure, the district court did not comply with the fourth *Waller* prong. *See Turrietta*, 2013-NMSC-036, ¶ 34. Thus, because prongs two, three, and four of the *Waller* test were not satisfied, we conclude that the courtroom closure in this case amounted to a violation of Defendant's constitutional rights.

**CONCLUSION**

**{14}**   For the foregoing reasons, we reverse and remand to the district court for a new trial. To our holding today, we add our suggestion that our Supreme Court Criminal Procedure Rules Committee be requested to consider adoption of a rule that requires motions for closure of trial to be filed and heard considerably in advance of the trial setting. Further, in regard to the development of law in the area of closure, it seems clear that our Supreme Court in *Turrietta* contemplated that future cases would work through, on a case-by-case basis, what may constitute an "overriding interest," a "closure . . . no broader than necessary to protect that interest," "reasonable alternatives," and "adequate findings" to support a closure. Having to resolve complex factual inquiries and make findings that support closure, if closure is called for, should be pursuant to a district court inquiry conducted prior to trial.

**{15}   IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *State v. Hood*, No. 31,568**

**APPEAL AND ERROR**
Remand

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Public Trial
Witnesses